ALICIA A.G. LIMTIACO
United States Attorney
STEPHEN F. LEON GUERRERO
Assistant U.S. Attorney
BELINDA ALCANTARA
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagåtña, Guam  96910
PHONE: (671) 472-7332
FAX: (671) 472-7215

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 14-00034 |
|---|---|
| Plaintiff, | |
| vs. | PLEA AGREEMENT |
| BYONG HEE KANG, | |
| Defendant. | |

The United States and Defendant, BYONG HEE KANG, enter into the following plea agreement:

**Charge and Penalties**

1. Defendant agrees to enter a guilty plea to Count 1 of the indictment charging him with Conspiracy to Commit Visa Fraud in violation of 18 U.S.C. § 371. The United States agrees to move to dismiss the remaining counts of the indictment upon sentencing.

2. Defendant understands and acknowledges the following:

(a) A conviction for Conspiracy to Commit Visa Fraud in violation of 18 U.S.C. § 371 carries a maximum penalty of five (5) years imprisonment; a $250,000 fine; a three (3) year

1

period of supervised release; and a $100 special assessment. In addition to these maximum penalties, any violation of a supervised release order could lead to an additional term of up to two years imprisonment, pursuant to 18 U.S.C. § 3583(e)(3). Defendant agrees to pay the special assessment at or before sentencing.

(b) Pursuant to the Mandatory Victim Restitution Act, the Court must order that the Defendant pay restitution to any victim of the offense of conviction, pursuant to 18 U.S.C. § 3663A.

(c) To forfeit $1,875,407.12 in U.S. Currency seized from the Guam Construction Company (GCC) corporate bank account at First Hawaiian Bank (FHB), FHB xx-xx4434 ("FHB 4434"), Dededo, Guam as proceeds from and/or involved in the offense of conviction, the visa fraud, a violation of 18 U.S.C. § 1546, and subject to forfeiture pursuant to 18 U.S.C. § 982(a)(6)(a).

**Voluntariness & Waiver of Trial Rights**

3. Defendant affirms that he has read this plea agreement and fully understands it. Defendant acknowledges that he enters this plea agreement and his decision to plead guilty voluntarily, and not because of any force, threats, promises or inducements, apart from the promises and inducements set forth in this plea agreement. He agrees to plead guilty because he is in fact guilty of the charged offense.

4. Defendant acknowledges that he understands that by entering a plea of guilty, he is waiving – that is, giving up – the following rights guaranteed to him by law and by the Constitution of the United States:

(a) the right to plead not guilty and to persist in a plea of not guilty;

(b) the right to a jury trial;

2

(c) the right to be represented by an attorney and, if necessary, to have the Court appoint counsel at trial and all stages of the proceedings;

(d) the right at trial to confront and cross-examine witnesses against him;

(e) the right to remain silent at trial, with such silence not being used against him in any way;

(f) the right, should he choose, to testify on his own behalf and to present evidence;

(g) the right to compel witnesses to appear at such a trial and to have them testify on his behalf;

Defendant understands that any statement he gives under oath in connection with this guilty plea may be used against him by the United States in a prosecution for perjury or false statement.

**Dismissal of Indictment**

5. The United States agrees to move to dismiss the remaining charges in the indictment at the time of sentencing.

**Elements of the Offense & Factual Basis**

6. Defendant understands and agrees that to establish the offense of Conspiracy to Commit Visa Fraud in violation of 18 U.S.C. § 371, the United States must prove each of the following elements beyond a reasonable doubt:

> First: On or about the dates alleged in the indictment, there was an agreement between two or more persons to commit the crime of visa fraud, as defined by 18 U.S.C. § 1546(a);
>
> Second: the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and
>
> Third: one of the members of the conspiracy performed at least one

3

overt act for the purpose of carrying out the conspiracy.

7. The United States and Defendant stipulate and agree to the following facts:

(a) Defendant was born in 1928 and is a citizen of the United States.

(b) Guam Construction Company, incorporated in Guam in 1982, did business in Guam as a general contractor for the construction, repair and remodeling of various building structures and the improvement of real estate. (Guam Construction Company is sometimes referred to here as "GCC" and as "the company.")

(c) BYONG HEE KANG ("Defendant B. KANG") was the company's president and treasurer. As the company's president, Defendant B. KANG ultimately made all the business decisions for Guam Construction Company, including recruitment of alien workers, employee hiring, pay and designation and assignment of job duties.

(d) Choon H. Kang (C. Kang) was the company's vice president.

(e) Antonia Bautista was the company's office manager and corporate secretary. She was employed with GCC since on or about 1994. Antonia Bautista started as an office secretary and was later promoted to office manager.

(f) During the period from 1995 until 2009 Defendant B. KANG in his capacity as GCC's president, petitioned for numerous alien workers from the Philippines and Korea under the H-2B nonimmigrant visa program. The majority of the workers were Philippine Nationals recruited and hired in the Philippines by Defendant B. KANG and GCC Office Manager Antonia Bautista, using a Philippine employment service agency managed by two individuals. Additional H-2B workers from Korea were recruited by C. Kang and petitioned by Defendant B. KANG.

(g) GCC is engaged in the business of general contracting. GCC was awarded contracts from the federal and local governments as well as private contracts in the construction

4

industry. Several foreign workers, who were petitioned by Defendant B. KANG under the H-2B program, confirmed that they worked other jobs for GCC not authorized by their H-2B visas. Several of these workers were recruited and hired by GCC based on their construction related specializations but fraudulently petitioned under other job categories. Once in Guam, several of these H-2B workers primarily worked in their specialized occupations or other undisclosed occupations for GCC and not in the job categories they were petitioned as, in violation of U.S. immigration law.

(h) GCC petitioned workers from the Philippines and South Korea to work for the company under the H-2B visa program. In the Philippines, GCC used an employment recruitment agency called Interworld Placement Agency (IPA), which was managed by V.G. and E.I., who are both Filipino Nationals, to recruit foreign construction workers from the Philippines to work in Guam for GCC. GCC also recruited foreign laborers from South Korea to work in Guam for the company. As GCC's vice president, C. Kang was responsible for the recruitment of Korean construction workers for the company.

(i) C. Kang travelled to Korea and posted job advertisements for GCC using a Korean government employment agency which managed an employment website called Worldjobs. C. Kang interviewed and assisted job applicants and referred these job applicants to Defendant B. KANG for hiring. Although C. Kang was responsible for employee recruitment in Korea, all hiring decisions were made by Defendant B. KANG. Moreover, Defendant B. KANG was the petitioner and signatory official for all I-129 petitions used to sponsor foreign labor from the Philippines and South Korea to work in Guam under the H-2B visa program.

(j) Utilizing the H-2B visa program, GCC recruited, hired, and sponsored several foreign workers from the Philippines to work in Guam for GCC. Defendant B. KANG, assisted

5

by V.G. and E.I., recruited and hired foreign workers in the Philippines for skilled positions, including, but not limited to, engineering, architecture, carpentry, electricians, and others. C. Kang recruited and hired alien workers in South Korea for similar skilled positions and other construction related occupations.

  (k) When an alien job applicant was selected by GCC for a skilled position, GCC and/or IPA personnel told some of the applicants that there were no available visas for the jobs that they applied and were hired for. Instead, GCC and IPA personnel told some of the applicants that they would be petitioned into Guam under another job category utilizing the H-2B visa program.

  (l) At various times, when a foreign applicant was selected for and accepted a position with GCC under their specialized skill(s), C. Kang, V.G., E.I and others with the knowledge and consent of Defendant B. KANG, instructed the workers to revise their job applications, resumes, and other supporting employment documents to falsely match their petitioned occupations as listed on the I-129 Petition and reflected on the H-2B visa applications. Additionally, some the workers were told to obtain false employment certifications and were instructed to misrepresent their job qualifications during the visa interviews to create the false impression that they were skilled and qualified in their petitioned occupations.

  (m) GCC applied for labor certifications through GDOL for specific construction-related jobs, primarily as a carpenter or plasterer, in connection with specific construction projects on Guam including the Guam International Airport Fence Project and various projects under the U.S. Air Force's "Simplified Acquisition of Base Engineer Requirements" (SABER) program, among others.

  (n) GCC submitted several applications for labor certifications to request for

6

multiple employees to be petitioned under the H-2B program. GCC's office manager Antonia Bautista, at the direction of Defendant B. KANG prepared the company's applications for labor certifications. Defendant B. KANG signed and certified the labor certification applications as GCC's president, and the company submitted the labor certification applications to the Government of Guam for approval.

(o) Upon approval of the GDOL labor certifications, Antonia Bautista, under the direction of Defendant B. KANG, prepared and filed with USCIS, the Form I-129's -- Petitions for Nonimmigrant Worker, and submitted the petitions, with supporting documents including labor certifications, applicant resumes, employment certification forms and other documents. At the time the aforementioned I-129 petitions and supporting documents were filed with USCIS, Defendant B. KANG had knowledge that the listed occupations of the workers were intentionally misrepresented on the petitions in an effort to facilitate their entry into the U.S. by fraudulently obtaining H-2B visas. The workers were in fact petitioned, recruited, and hired by Defendant B. KANG specifically for their skills and qualifications in other undisclosed occupations not listed on the I-129 petitions, and were to be used by the company to work in those undisclosed job categories.

(p) After the H-2B workers arrived in Guam, Defendant B. KANG caused GCC to employ them in skilled occupations not authorized on their H-2B visas -- occupations including, but not limited to, electricians, engineers, architects, site managers, heavy equipment mechanics, heavy equipment operators, and others. Several H-2B workers worked for GCC in their specialized fields and not in the jobs authorized by their labor certifications, I-129 Petitions and H-2B visas. Defendant B. KANG tracked the actual skill sets of his H-2B workers by instructing his personnel to create detailed spreadsheets identifying the actual skilled

7

construction trade of each H-2B worker. Defendant B. KANG and others used the spreadsheets for project scheduling and job assignments. Several H-2B workers petitioned by Defendant B. KANG worked jobs for GCC that would have entitled them to higher wages but the workers were instead paid based on their petitioned occupations, resulting in lower wage rates based on GDOL standards.

(q) After the H-2B workers arrived in Guam and began working for GCC, Defendant B. KANG filed I-129 petitions to extend the stay and employment several of workers on Guam. Defendant B. KANG signed and certified all the I-129 extension petitions, which were based on the workers' originally petitioned occupations, and not on the actual type of work they performed for GCC on Guam.

(r) It was further part of the conspiracy that Defendant B. KANG and his co-conspirators caused the following workers, among others, to be brought to Guam:

| Worker (initials) | Worker's Country of Citizenship | Worker's Actual Occupation/Skill |
|---|---|---|
| R.D.C. | Philippines | Civil engineer |
| R.L. | Philippines | Civil engineer |
| R.S. | Philippines | Civil engineer |
| C.K.L. | Korean | Civil engineer |
| A.G. | Philippines | Tile-setter and mason |
| E.V. | Philippines | Electrician |
| N.B. | Philippines | Carpenter |
| A.C. | Philippines | Civil engineer |
| R.R. | Philippines | Civil engineer |
| W.C. | Philippines | Mechanical engineer |
| P.A. | Philippines | Electrical engineer |
| K.H.L. | Korea | Heavy equipment mechanic |
| H.M. | Philippines | Carpenter and plumber |
| M.C. | Philippines | Carpenter/mason/painter |
| J.S. | Philippines | Mason |
| A.F. | Philippines | Mason |
| G.M. | Philippines | Architect (AutoCAD operator) |
| A.D. | Philippines | Carpenter |
| K.S.L. | Korean | Construction manager and supervisor |
| N.A. | Philippines | Electrician |
| M.F. | Philippines | Electrician |
| I.T. | Philippines | Mason |
| R.M. | Philippines | Electrician |

8

| E.S. | Philippines | Electrician |
| M.G. | Philippines | Construction supervisor and mason |

(s) It was further part of the conspiracy that Defendant B. KANG and his co-conspirators attempted to cause the following workers, among others, to be brought to Guam:

| Worker (initials) | Worker's Country of Citizenship | Worker's Actual Occupation/Skill |
| --- | --- | --- |
| R.G. | Philippines | Civil engineer |
| D.T. | Philippines | Steelworker |

(t) In furtherance of this conspiracy, and to effect its objectives, on or about the following dates, Defendant B. KANG and his co-conspirators performed and caused to be performed the following overt acts:

| No. | Date | Overt Act |
| --- | --- | --- |
| 1 | November 18, 2004 | B. Kang signed and caused the filing of an I-129 petition (WAC-05-034-50584), prepared by Office Manager and submitted to USCIS, to allow R.D.C and R.L., both Philippine nationals and skilled engineers, to obtain H-2B visas to enter the U.S. as carpenters |
| 2 | October 21, 2005 | B. Kang signed and caused the filing of an I-129 petition (WAC-06-018-52169), prepared by Office Manager and submitted to USCIS, to allow D.T., a Philippine national and a skilled steelworker and N.A., a Philippine national and a skilled electrician, to obtain H-2B visas to enter the U.S. as plasterers |
| 3 | December 4, 2005 | B. Kang signed and caused the filing of an I-129 petition (WAC-06-019-52131), prepared by Office Manager and submitted to USCIS, to allow R.S., a Philippine national and skilled engineer, to obtain an H-2B visa to enter Guam as a carpenter |
| 4 | November 13, 2006 | B. Kang signed and caused the filing of an I-129 petition (EAC-07-031-50061), prepared by Office Manager and submitted to USCIS, to allow E.S., a Philippine national and skilled electrician, to enter Guam using an H-2B carpenter visa |
| 5 | April 16, 2007 | C. Kang posted a job advertisement (Job Certificate #J20070416678) for a GCC construction machinery and mechanic position in a Korean job recruitment website named Worldjob. Based on the job advertisement, C. Kang recruited and hired K.H.L for the mechanic position but told K.H.L that there were no available mechanic visas so K.H.L would have to enter Guam with an H-2B carpenter visa |
| 6 | May 7, 2007 | B. Kang signed and caused the filing of an I-129 petition (WAC-07-160-53961), and submitted to USCIS, to allow C.K.L and G.W.L, both Korean nationals and skilled engineers and K.H.L., a Korean National and skilled |

9

| | | mechanic, to obtain H-2B visas to enter Guam as carpenters |
|---|---|---|
| 7 | August 16, 2007 | B. Kang signed and caused the filing of an I-140, Petition for an Immigrant Worker (LIN0800256313), sponsoring R.S. as a carpenter |
| 8 | August 16, 2007 | B. Kang signed and caused the filing of an I-140, Petition for an Immigrant Worker (LIN0800753560), sponsoring R.D.C. as a carpenter |
| 9 | August 17, 2007 | C. Kang had K.H.L sign a GCC employment contract and accompanied K.H.L to the U.S. Embassy in Korea for the visa interview. On the same day, K.H.L was approved an H-2B carpenter visa |
| 10 | September 13, 2007 | B. Kang signed and caused the filing of an I-129 petition (WAC-07-269-51935), prepared by Office Manager and submitted to USCIS, to allow N.B., M.G., H.M., M.C., J.S., A.F., G.M., A.G., E.V., all being skilled in various construction related occupations, to enter the U.S. using H-2B plasterer visas |
| 11 | September 24, 2007 | B. Kang signed and caused the filing of an I-129 petition (WAC0727552335), prepared by Office Manager and submitted to USCIS, to allow N.A., a Philippine national and skilled electrician, to extend his employment in Guam under an H-2B plasterer visa |
| 12 | May 23, 2008 | B. Kang signed and caused the filing of an I-129 petition (WAC-08-168-51670), prepared by Office Manager and submitted to USCIS, to allow R.R., W.C., P.A., R.G. and A.C., all Philippine nationals and skilled engineers, to enter Guam with H-2B carpenter visas |
| 13 | May 23, 2008 | B. Kang signed and caused the filing of an I-129 petition (WAC-08-168-50792), prepared by Office Manager and submitted to USCIS, to allow A.D., N.A., M.F., I.T. and R.M., all being Philippine nationals and skilled in various construction related occupations, to enter the U.S. using H-2B plasterer visas |
| 14 | May 27, 2008 | B. Kang signed and caused the filing of an I-129 petition (WAC-08-168-50359), prepared by Office Manager and submitted to USCIS, to allow K.S.L., a Korean national and skilled construction supervisor, to obtain an H-2B visa to enter the U.S. as a carpenter |
| 15 | August 31, 2009 | B. Kang signed and caused the filing of an I-129 petition (WAC0923650821), prepared by Office Manager and submitted to USCIS, to allow K.S.L., a Korean national and skilled construction supervisor, to obtain an H-2B visa to enter the U.S. as carpenter |
| 16 | July 2010 | C. Kang threatened K.S.L, who B. KANG sent back to Korea because K.S.L was caught by GDOL working an unauthorized job in Guam, for requesting his overtime payment. C. Kang told K.S.L that she would hire someone in Korea to take that money back from him |

(u) Through his visa fraud scheme, $1,875,407.12 deposited in the Dededo,

10

Guam branch, First Hawaiian Bank account number xx-xx4434 (hereinafter "FHB 4434") held in the name of GUAM CONSTRUCTION CO INC, constitutes, or is derived from or is traceable to proceeds obtained directly or indirectly from violations of 18 U.S.C. §1546(a) (Visa Fraud) or a conspiracy to commit such offense in violation of 18 U.S.C. §371.

(v) The parties agree that this stipulated statement of facts is sufficient to support Defendant's guilty plea. It is made for that limited purpose and does not contain all facts relating to the underlying criminal conduct.

**Sentencing Guidelines & Procedures**

8. Defendant understands and acknowledges that:

(a) The Sentencing Guidelines apply in this case. In determining a sentence, the Court is obligated to calculate the applicable sentencing guideline range and to consider that range, possible departures or variances under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a);

(b) The United States will make its full discovery file available to the Probation Office for its use in preparing the presentence report;

(c) The Court will rely on the facts established in this case – including, but not limited to, the facts Defendant stipulates to in this plea agreement – in determining the applicable offense level and resulting guideline range;

(d) Sentencing discussions between Defendant and defense counsel or between defense counsel and the U.S. Attorney's Office are not part of this plea agreement, and Defendant is not relying on the possibility of any particular guideline range or sentence based on any such discussions;

(e) No promises or guarantees have been made to Defendant regarding either the

guideline range or the sentence that will be imposed. The Court is not required to follow the Sentencing Guidelines or to accept any sentencing recommendations made by the United States or Defendant, and the Court may impose any sentence up to and including the maximum penalties set out above. Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, if the Court does not accept a sentencing recommendation made by the United States, Defendant nevertheless has no right to withdraw his guilty plea.

**Cooperation**

9. Defendant agrees to make a full, complete and truthful statement regarding his involvement in criminal conduct, as well as the involvement of all others known to him. Defendant agrees to testify fully and truthfully at any trials or hearings. Defendant understands that this plea agreement is not conditioned on the outcome of any trial. Defendant further understands, however, that this plea agreement is contingent on complete and truthful testimony by Defendant in response to questions asked by the Court, the prosecutor, or lawyers for any party.

10. If Defendant provides self-incriminating information as part of his cooperation regarding the unlawful activities of others, the United States agrees not to use such information against Defendant at his sentencing. Such information may be revealed to the Court but shall not be used against Defendant in determining Defendant's sentence range. There shall be no such restrictions on the use of information: (a) previously known to law enforcement agencies; (b) revealed to law enforcement agencies by, or discoverable through, an independent source; (c) in a prosecution for perjury or giving a false statement; or (d) in the event there is a material breach of this agreement by Defendant.

11. Defendant understands and agrees that his sentencing date may be continued by the

Court until after the indictment and trial of others, so as to enable the United States and the Court to assess Defendant's cooperation.

## Agreements of the United States

12. The United States agrees to recommend that the Court, in determining Defendant's sentencing guideline range, apply the maximum available reduction for acceptance of responsibility. This recommendation, however, is based on facts currently known to the United States and is contingent on Defendant accepting responsibility according to the factors set forth in § 3E1.1 of the Sentencing Guidelines. The United States is free to withdraw this recommendation if Defendant has previously engaged in any conduct which is unknown to the United States and is inconsistent with acceptance of responsibility, if he does not fully perform under the forfeiture terms of this agreement, or if he engages in any conduct between the date of this plea agreement and the sentencing hearing which is inconsistent with acceptance of responsibility.

13. The United States agrees to recommend at sentencing that the Court impose a sentence at the low end of the applicable guideline range. Moreover, the parties agree that § 5H1.2 of the Sentencing Guidelines is applicable at sentencing. If, however, the United States determines that Defendant has provided substantial assistance in the investigation or prosecution of another person, the United States agrees to move the Court at sentencing, pursuant to § 5K1.1 of the Sentencing Guidelines, to impose a sentence below the otherwise applicable sentencing guideline range. The determination of whether defendant has provided such substantial assistance rests entirely within the discretion of the United States Attorney's Office. Defendant acknowledges that even if the United States makes such a motion, the Court is not required to reduce Defendant's sentence.

## Forfeiture

14. The Defendant agrees to the immediate forfeiture of the $1,875,407.12 in U.S. Currency seized from FHB 4434, Dededo, Guam branch on August 1, 2014 as proceeds from and/or involved in the offense of conviction, the visa fraud, a violation of 18 U.S.C. § 1546, and subject to forfeiture pursuant to 18 U.S.C. § 982(a)(6)(a). Furthermore, the Defendant consents to the immediate entry of a preliminary order of forfeiture as to said $1,875,407.12. The Defendant has/had an interest in the $1,875,407.12; and such property constitutes, or was proceeds the Defendant obtained, directly or indirectly, as a result of the visa fraud charged in the Superseding Indictment.

15. Defendant does hereby, forfeit, release, and/or transfer all interests in the property described above, and agrees to take all steps deemed necessary by the United States Attorney to ensure that clear title, ownership, and possession vests in the United States of America, including, but not limited to, the signing of all instruments necessary to pass title, the approval and signing of any stipulation for judgment or consent decree of forfeiture, and of any other documents necessary to effectuate such transfers and vest clear title in the Government.

17. The Defendant agrees to forfeit all interests he owns in the $1,875,407.12 in U.S. Currency seized from the co-defendant's GCC corporate account FHB 4434. With respect to any asset which the Defendant has agreed to forfeit, the Defendant waives any constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution.

18. To the extent that the Defendant has entered into any agreement with others for the

14

purpose of transferring assets or dividing assets obtained during the course of the visa fraud conspiracy, the Defendant agrees that any such agreements shall be without effect for the purpose of determining that those assets are subject to forfeiture or restitution remedies.

19. The defendant agrees to take all steps as requested by the United States, including executing documents needed to pass clear title to accomplish the forfeiture of $1,875,407.12. If called upon to do so by the government, the defendant agrees to testify truthfully in any judicial forfeiture proceeding regarding forfeiture matters, including any proceedings regarding any third-party claims as to property subject to forfeiture in this matter.

20. The defendant further agrees to waive all interest in any of the above-described assets in any judicial forfeiture proceeding. The defendant agrees to consent to the immediate entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise him of this, pursuant to Rule 11(b)(1)(J), at the time his guilty plea is accepted or at sentencing.

21. The defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.

22. The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive him, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property

pursuant to this agreement shall be determined as if defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full.

23. The Defendant understands that his failure to perform the obligations relating to forfeiture of the $1,875,407.12 will void this Plea Agreement in its entirety at the option of the government.

## Financial Disclosure Obligations

24. Defendant agrees to submit to the U.S. Attorney's Office, within three weeks of the execution of this plea agreement, a complete, accurate and truthful financial statement and accompanying releases, in a form it provides and as it directs. Defendant agrees to disclose all assets in which he has any interest or over which he exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. Defendant authorizes the U.S. Attorney's Office to obtain a credit report on him to evaluate his ability to satisfy any financial obligation imposed by the Court.

25. Defendant understands and agrees that any monetary penalties imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States, pursuant to 18 U.S.C. § 3613. Defendant understands that, by law, interest accrues on any remaining balance of the debt. Defendant agrees not to dissipate assets. If Defendant is financially unable to immediately pay any monetary penalties in full, Defendant agrees: (a) to cooperate with the United States Attorney's Office; (b) to provide updated financial statements upon request by the United States Attorney's Office and to keep the office advised about Defendant's current address; and (c) for his debt to be placed on the Treasury Offset Program and any tax refund/rebate offset program existing in his state of residency. Defendant

understands that any funds captured by an offset program will be paid towards his monetary penalties, but does not relieve him of his obligation to pay the monetary penalties in full.

### Consequences of Breach

26. Defendant agrees that if he is deemed by the Court to be in material breach of any of his obligations under this agreement: (a) Defendant shall not be entitled to withdraw his plea of guilty made in connection with this agreement; (b) the United States may, in its discretion and at its option, declare null and void any of its obligations under this agreement; and (c) the United States may recommend whatever sentence it may deem appropriate. The issue of whether Defendant is in material breach of this agreement shall be determined by the Court in a proceeding at which the United States shall be required to establish breach by a preponderance of the evidence. Defendant understands and agrees that the Federal Rules of Evidence shall not apply at any such hearing, and that the United States may rely at the hearing on any statements or evidence Defendant may have given during cooperation with law enforcement.

### Waiver of Post-Sentencing Rights

27. Defendant voluntarily, knowingly and intelligently waives any right to appeal or to collaterally attack any aspect of his conviction or sentence including, but not limited to, any pretrial dispositions of motions and other issues. Defendant acknowledges and agrees that this waiver shall result in the dismissal of any appeal or collateral attack Defendant might file challenging his conviction or sentence in this case, other than an attack based on alleged ineffective assistance of counsel, alleged involuntariness of the Defendant's guilty plea, or alleged prosecutorial misconduct.

### Consequences of Withdrawal of Guilty Plea or Vacating of Conviction

28. Defendant agrees that if he is allowed to withdraw his guilty plea or if any conviction

17

entered pursuant to this agreement is vacated or rendered invalid for any reason, the Court shall, at the request of the United States, reinstate any charges that were dismissed as part of this agreement. Defendant also agrees that within six months after the date the order vacating or invalidating Defendant's conviction or allowing him to withdraw his guilty plea becomes final, the United States may file additional charges against Defendant relating directly or indirectly to the conduct underlying the guilty plea. Defendant waives his right to challenge any such additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

## Completeness and Effect

29. Nothing in this plea agreement shall bind any federal, state or local districts, jurisdiction or law enforcement agency, other than the United States Attorney for the Districts of Guam and the Northern Mariana Islands.

30. Defendant acknowledges that this is the only plea agreement in this. This plea agreement cannot be modified other than by a writing signed by all parties, or by a modification acknowledged by all parties on the record in Court.

31. Defendant waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A (Statutory Note), for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

## Acknowledgments

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. By signing this agreement, I certify that I

have read it (or that it has been read to me in my native language). I have been fully informed by counsel that a potential conflict of interest issue was raised as to counsel's representation of third party intervenors (Antonia Bautista, Ki-Wook Han and Roland Salonga) in Superior Court of Guam Civil Case no. CV0602-13 and, I knowingly waive any potential conflict and consent to counsel's representation. My counsel has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines.

DATED: 8/15/16

BYONG HEE KANG
Defendant

DATED: 8/15/16

DAVID J. LUJAN
Attorney for Defendant

ALICIA A.G. LIMTIACO
United States Attorney
Districts of Guam and the Northern Mariana Islands

DATED: 8/16/16

STEPHEN F. LEON GUERRERO
Assistant U.S. Attorney

DATED: 8·16·16

BELINDA ALCANTARA
Assistant U.S. Attorney